[No. 1764.]

## JOHN RISBY *v.* THE STATE.

SELF-DEFENSE — CHARGE OF THE COURT. — Article 574 of the Penal Code does not qualify, enter into or refer to article 572 of the said Code, but has reference to article 570.  Under a proper construction of this statute, it is a rule of self-defense that if one person attacks another in such manner as to produce in the mind of the person attacked a reasonable expectation or

fear of death or serious bodily harm, the party thus attacked is not required
to resort to all other means save retreat to prevent the injury. If, however,
another person interferes in behalf of the person about to be injured, he
will not be justified in killing the aggressor, unless the life or person of the
injured party is in peril by reason of such attack. See the opinion of the
court *in extenso* for charges of the trial court which, announcing a con-
trary doctrine, are *held* erroneous.

Appeal from the District Court of Grayson. Tried below before
the Hon. R. Maltbie.

The conviction in this case was for an assault with intent to mur-
der one William Hill, in Grayson county, Texas, on the 6th day of
September, 1884. A term of three years in the penitentiary was
the penalty assessed against the appellant. The parties to the con-
troversy out of which this prosecution arose, and all of the witnesses,
were negroes.

William Hill was the first witness examined by the State. He
testified that on the night of September 6, 1884, he was shot through
the shoulder at a ball in Denison, Texas, at which ball he was one
of the musicians. Defendant came to the ball with Bill Wright
and Henry Washington. The three were drinking. When one of
the sets was about half danced out, the witness heard a pistol shot.
Looking up he saw the defendant with a smoking pistol in his hand,
pointed towards the crowd. The defendant about this time drew
his pistol and called out: "Get out, you d—d sons of b—hs, or I
will kill every one of you." Witness jumped with the rest of the
crowd. Three shots were fired after the witness jumped. The
second shot penetrated the witness's shoulder and laid him up for
some time. This shot was fired from a thirty-eight calibre pistol.

Joe Beard, the next witness for the State, testified that he was
one of the musicians at the ball at which the shooting occurred.
He saw the defendant shoot, and when he looked up he saw a smok-
ing pistol in the defendant's hand. Defendant fired three shots at
the crowd or at some one in the crowd, which was going out at the
door. Defendant then walked to the door and was given a drink of
whisky from a bottle by Bill Wright. Defendant, Wright and
Washington then left together. The witness next saw the defend-
ant about an hour later in the custody of an officer.

· Robert Hill testified, for the State, substantially as did Joe Beard.
The State closed.

Bill Wright testified that he went to the ball with the defendant.
A short time after his arrival he heard a conversation between the
door-keeper, whose name he did not know, and the defendant about

the defendant's admission fees. Defendant told the door-keeper that he would pay in a few minutes. About this time the door-keeper, who was facing the defendant, Washington and Celia Shepherd, stepped back and placed his hand in his pocket. He then heard a pistol shot in the direction of where the door-keeper stood, which was followed immediately by two other shots. Witness was standing very close to the defendant, and if defendant had fired, or had held a pistol in his hand, witness would have seen it. Defendant did not shoot, nor did he have a pistol in his hand. Washington left town that night, and the witness has not seen him since.

The testimony of Celia Shepherd, for the defense, is in the main set forth in the opinion of the court. In addition to her evidence, as quoted in the opinion, she testified that she knew that the defendant did not fire a shot. Washington left the country that night, and has not since been seen by the witness. The defendant, who was in no wise related to the witness, was in the habit of visiting the witness's house both by night and day.

Eli Gentry testified, for the defense, that the State's witness Joe Beard wanted him to see a woman in Denison and get $30 for him, for which, he said, he would leave the country, and not appear as a witness against the defendant. Witness was the proprietor of a negro bar-room in Denison, and the defendant was his bar-keeper.

Joe Beard, in rebuttal for the State, testified that he did not ask Eli Gentry for $30, or otherwise offer to accept a bribe in this case. A woman, the mother of the defendant, told witness that Gentry would give him, witness, $30. Witness asked Gentry what this suggestion meant. Gentry replied that he did not know, but would see the woman. Witness never afterwards spoke to Gentry about the matter.

The charge of the court and the sufficiency of the evidence to support the conviction were complained of in the motion for new trial.

*A. C. Turner*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

HURT, JUDGE. Appellant was convicted of an assault to kill and murder one Wm. Hill, and his punishment was assessed at confinement in the penitentiary for a term of three years. The State proved by several witnesses that the appellant fired his pistol into a crowd of colored persons, the second shot taking effect in Wm. Hill's shoulder.

Appellant proved by Bill Wright that there was an altercation between the door-keeper and the defendant about the fees due by defendant (the shooting occurred at a dance), and about the time of the altercation the door-keeper placed his hand in his pocket and stepped back; he was fronting defendant, Celia Shepherd and —— Washington, and a shot was heard in the direction of the door-keeper, and immediately two other shots.

By Celia Shepherd, "that she was standing by the side of defendant when the first shot was fired, the door-keeper being in front of them. That she heard just before the first shot some words between the door-keeper and defendant. After these words she saw the door-keeper go to the proprietor of the house and have a talk with him. And after this conversation the door-keeper came back in front of witness and defendant, with his hand in his pocket. He stepped back and a shot was fired from the direction of the door-keeper; that this shot went through a handkerchief that was in the hand of the witness; that defendant did not fire the first shot.

It will readily be seen that self-defense was the defense relied by the defendant to defeat a conviction. Upon this subject the court charged the jury: "8th. If you believe from the evidence that the defendant shot off and discharged a pistol, loaded with gunpowder and leaden balls, at one Martin, or the person who kept the door at the dance, but you also believe that at or before the time of such shooting it reasonably appeared to the defendant from some act then done or word spoken, or such words coupled with the acts of said Martin or other person, that such person was about to murder or maim the defendant, and he shot in consequence thereof, and Hill was wounded thereby, you will find the defendant not guilty.

"9th. If you believe from the evidence that Martin, the door-keeper, made an unlawful and violent attack, such as produced a reasonable expectation or fear of death or serious bodily harm upon the defendant, and that defendant resorted to all means in his power to prevent the injuries, except to retreat, and that he fired off and discharged his pistol at said Martin while said Martin was in the very act of making such unlawful attack; then, under these circumstances, if you believe said Hill was struck by a ball from defendant's pistol, you will find the defendant not guilty."

Article 574 of the Penal Code does not qualify, enter into or refer to article 572, but has reference to article 570. Hence if the attack is such as produces a reasonable expectation or fear of death or some serious bodily harm, the party thus attacked is not required to

resort to all other means for the prevention of the injury. If, however, another person interferes in behalf of the party about to be injured, he will not be justified in killing the aggressor unless the life or person of the injured party is in peril by reason of such attack upon his property. (*Horbach* v. *The State*, 43 Texas, 242.)

For the errors in the charge of the court the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered February 4, 1885.]